In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 23-1165

LUZMARIA ARROYO,

*Plaintiff-Appellant*,

*v.*

VOLVO GROUP NORTH AMERICA, LLC, doing business as Volvo Parts North America,

*Defendant-Appellee*.

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:12-cv-6859 — **Robert M. Dow, Jr.**, *Judge*.

———————

ARGUED JANUARY 25, 2024 — DECIDED FEBRUARY 27, 2024

———————

Before HAMILTON, BRENNAN, and KIRSCH, *Circuit Judges*.

KIRSCH, *Circuit Judge*. LuzMaria Arroyo, an Army Reservist, sued her employer, Volvo Group North America, LLC, alleging discrimination based on her military status and her related post-traumatic stress disorder. After we reversed the district court's ruling granting summary judgment to Volvo, the case proceeded to trial, where a jury ruled for Arroyo and awarded her $7,800,000 in damages. Following trial, the

district court granted judgment as a matter of law to Volvo on Arroyo's Americans with Disabilities Act claim and ordered a new trial on the remaining Uniformed Services Employment and Reemployment Rights Act claim. After the jury found for Volvo in the second trial, Arroyo appealed. Because Arroyo is not a qualified individual under the ADA, and because the district court did not abuse its discretion in finding that the jury verdict of the first trial resulted from passion and prejudice, we affirm.

I

LuzMaria Arroyo worked for Volvo Group North America, LLC, from June 2005 until her termination in November 2011. During that time, Arroyo also served as an Army Reservist and often had to take time off from Volvo to attend to her military duties. Because of her military service, Arroyo suffered from post-traumatic stress disorder. Volvo was aware of Arroyo's military status and her PTSD diagnosis at all relevant times during her employment.

Employees at Volvo are subject to an attendance policy under which the employee receives a whole or fractional "occurrence" every time he or she arrives late to work without providing required documentation. The policy outlines the disciplinary steps to be taken as an employee accrues more occurrences, with the last step resulting in termination. After returning from a tour of duty in 2010, Arroyo accumulated several occurrences, most of which involved her arriving to work a few minutes late.

Ultimately, Volvo terminated Arroyo's employment. While Volvo claimed Arroyo's termination stemmed from her violations of the attendance policy, Arroyo believed her

termination was the result of discrimination based on her disability and her status as a member of the military. Therefore, in August 2012, she sued Volvo for discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq., the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 et seq., and the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. §§ 4301 et seq.; she also brought an intentional infliction of emotional distress claim under state law.

The district court granted summary judgment to Volvo on all claims, and Arroyo appealed. We reversed on Arroyo's ADA and USERRA claims. *Arroyo v. Volvo Grp. N.A., LLC*, 805 F.3d 278, 286–87 (7th Cir. 2015) ("*Arroyo I*"). On remand, the parties proceeded to trial on those two claims. A jury returned a verdict in favor of Arroyo across the board, awarding her $2,600,000 in compensatory damages and $5,200,000 in punitive damages for her ADA claim and finding that Volvo willfully violated USERRA (because of the liability finding under the ADA, damages were not awarded under the USERRA claim). After Arroyo requested equitable relief following trial, the district court awarded her back pay, front pay, and other employment-related compensation. However, pursuant to the statutory cap under 42 U.S.C. § 1981a(b)(3)(D) of the ADA, the district court reduced Arroyo's compensatory and punitive damages award to $300,000.

Volvo then moved for judgment as a matter of law or, alternatively, a new trial. Fed. R. Civ. P. 50 & 59. The district court granted Volvo's motion for judgment as a matter of law on the ADA claim because Arroyo failed to show at trial that she was a qualified individual under the ADA. The court next addressed Volvo's motion for a new trial. In doing so, the

court first found the jury's damages award on the ADA claim to be monstrously excessive and the result of passion and prejudice. But because the court had already resolved the ADA claim in Volvo's favor, it only needed to determine whether that passion and prejudice likewise infected the jury's liability determination on the USERRA claim. The court concluded that it did, thereby warranting a new trial on the USERRA claim alone.

In February 2022, the district court held a second jury trial on the USERRA claim. Prior to trial, the district court excluded evidence of Arroyo's PTSD diagnosis and treatment, finding the evidence irrelevant to the USERRA claim and likely to confuse the jury. Ultimately, the jury found in favor of Volvo. Arroyo, understandably frustrated with the result, filed a Rule 59(e) motion to reconsider. In her motion, Arroyo did not explicitly seek a new trial; rather, she asked the court to set aside the verdict in the second jury trial and reinstate the verdict rendered in the first. The district court interpreted Arroyo's request for relief as a motion seeking reconsideration of its earlier order resolving the ADA claim and granting a new trial on the USERRA claim. The court denied the motion. Arroyo timely appealed.

## II

Arroyo challenges the district court's orders granting judgment as a matter of law to Volvo on the ADA claim and ordering a new trial on the USERRA claim. Arroyo also appeals the denial of her motion to reconsider, but we need not address that motion because we are reviewing the underlying orders on the merits.

A

The district court granted Volvo judgment as a matter of law on the ADA claim because Arroyo failed to prove that she was a qualified individual under the statute. We review a district court's decision to grant judgment as a matter of law de novo. *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 721 (7th Cir. 2003).

A plaintiff may only recover under the ADA if she is a "qualified individual," in other words, someone who, "with or without reasonable accommodation, can perform the essential functions of the job." *Peters v. City of Mauston*, 311 F.3d 835, 842 (7th Cir. 2002) (citing 42 U.S.C. § 12111(8)). While regular attendance is not an essential function of every job, *Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 900 (7th Cir. 2000), an employer may treat regular attendance as an essential job requirement and need not accommodate unreliable attendance, *Taylor-Novotny v. Health All. Med. Plans, Inc.*, 772 F.3d 478, 489 (7th Cir. 2014).

Here, Volvo maintained a policy that clearly outlined its attendance requirement, explained how an employee accumulates "occurrences" for arriving late to work, and listed the consequences that would result from reaching a certain number of occurrences. Volvo thus undoubtedly viewed regular and timely attendance as an essential job function. See *id.* at 490 (treating regular attendance as an essential job function in part because the employer had an explicit attendance policy in place); see also 42 U.S.C. § 12111(8) ("[C]onsideration shall be given to the employer's judgment as to what functions of a job are essential … ."). Arroyo indisputably arrived to work late several times and ultimately accumulated sufficient occurrences for termination under Volvo's policy; she therefore

did not perform an essential job function, barring her status as a qualified individual under the ADA.

Arroyo's counterarguments are unpersuasive. First, she argues that she is a qualified individual because her supervisors consistently gave her positive job performance reviews. But Volvo only terminated Arroyo because of her attendance issues; her otherwise satisfactory job performance is irrelevant. See *Waggoner v. Olin Corp.*, 169 F.3d 481, 485 (7th Cir. 1999) ("[A]n evaluation of the quality of Tyndall's performance does not end our inquiry. In addition to possessing the skills necessary to perform the job in question, an employee must be willing and able to demonstrate these skills by coming to work on a regular basis.") (quotation omitted) (alteration in original).

Second, Arroyo complains of the unreasonable strictness of Volvo's policy, noting that she often received occurrences for arriving a mere one or two minutes late. But we are not a "super-personnel department that second-guesses facially legitimate employer policies," and it is not our role "to determine whether an employer's expectations were fair, prudent, or reasonable." *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016) (citation omitted). Simply, Volvo required its employees to be in the building and ready to work at their scheduled time, yet Arroyo failed to perform that essential job function, however minimally.

Finally, Arroyo believes that the district court's actions contravened our decision in *Arroyo I*. But we reversed on the ADA claim solely because the record contained sufficient evidence for a reasonable jury to find that Volvo discriminated against Arroyo based on her disability. *Arroyo I*, 805 F.3d at 287. Our decision did not discuss Arroyo's status as a

qualified individual under the ADA; the district court's grant of judgment as a matter of law based on that ground therefore did not conflict with our decision in *Arroyo I*. Accordingly, the district court properly granted Volvo's motion for judgment as a matter of law on the ADA claim.

B

The district court ordered a new trial on the USERRA claim by finding that the jury's verdict as to the ADA claim resulted from passion and prejudice that also infected the jury's determination of USERRA liability. We review a district court's ruling on a motion for a new trial for abuse of discretion. *Hakim v. Safariland, LLC*, 79 F.4th 861, 868 (7th Cir. 2023).

A district court can order a new trial "if the verdict is not rationally connected to the evidence, if it is born out of passion and prejudice, or if it is monstrously excessive." *Slane v. Mariah Boats, Inc.*, 164 F.3d 1065, 1067 (7th Cir. 1999). Typically, when a court finds that the damages portion of a jury verdict stemmed from passion and prejudice, a new trial on both damages and the underlying liability is warranted. See *Ustrak v. Fairman*, 781 F.2d 573, 579–80 (7th Cir. 1986) ("The damages awarded by the jury … were so extraordinary as to suggest that not only the jury's assessment of damages but also its assessment of liability may have been tainted by 'passion and prejudice,' thereby requiring that the entire verdict, and not merely the damages part of it, be set aside."); *McKinnon v. City of Berwyn*, 750 F.2d 1383, 1389 (7th Cir. 1984) ("If the motion is renewed and a new trial ordered, it will be limited to damages unless the ground of the order setting aside the verdict is such as to imply that the whole verdict was tainted—for example, because the jury was carried away by passion or prejudice.").

Here, the jury awarded Arroyo a substantial sum for the ADA claim: $2,600,000 in compensatory damages and $5,200,000 in punitive damages. The district court correctly acknowledged that a large damages award alone does not automatically lead to an inference of passion and prejudice. See *Dresser Indus., Inc., Waukesha Engine Div. v. Gradall Co.*, 965 F.2d 1442, 1448–49 (7th Cir. 1992). Instead, the court emphasized Arroyo's failure to present any evidence of compensatory damages at trial. It then noted that the award dwarfed the sums given in similar cases where at least some evidence of damages was presented. See *Adams v. City of Chicago*, 798 F.3d 539, 543 (7th Cir. 2015) (noting that a comparison to awards in similar cases is a factor to consider in determining the excessiveness of an award); cf. *E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 834 (7th Cir. 2013) (in an ADA case, citing examples of compensatory damages awarded by juries that fell between $50,000 and $250,000). Finally, the court observed that it could not reasonably separate the jury's verdict on the ADA claim from the closely related USERRA claim, rendering the entire verdict tainted.

Arroyo does not point to any evidence of compensatory damages that she presented at trial, nor does she otherwise explain how the district court erred in granting a new trial on the USERRA claim. We conclude that the district court acted within its discretion when it found that the jury's ADA damages award resulted from passion and prejudice that infected the rest of the verdict, thereby warranting a new trial on the remaining USERRA claim.

Finally, it is unclear from her motion for reconsideration following the second trial whether Arroyo ever sought a new trial. Assuming she did, the only alleged error she raises on

appeal was the district court's decision to exclude evidence of her PTSD diagnosis and treatment. But only the USERRA claim remained in the second trial, and USERRA prohibits discrimination based on military status alone rather than on conditions stemming therefrom. See 38 U.S.C. § 4311(a) ("A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied … any benefit of employment by an employer *on the basis of that membership … .*") (emphasis added); see also *Holmes v. Dep't of Justice*, 498 F. App'x 993, 995 (Fed. Cir. 2013) ("A PTSD injury alone is not enough to raise a cognizable discrimination claim under USERRA."). Thus, the district court did not abuse its discretion in excluding evidence of Arroyo's PTSD as irrelevant.

AFFIRMED